**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| **JOHN D. BICKHART** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO.    15-5651** |
| | : |
| **CARPENTERS HEALTH AND WELFARE** | : |
| **FUND OF PHILADELPHIA AND** | : |
| **VICINITY, et al.** | : |


**MEMORANDUM OPINION**

**SCHMEHL, J.    /s/ JLS**                                        **JULY  24, 2017**


Plaintiff John D. Bickhart ("Bickhart") brought this action, claiming defendants violated the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. 1001, *et seq.* when they terminated plaintiff's retiree medical benefits. Presently before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the defendants' motion is granted and the plaintiff's motion is denied.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

The parties have stipulated to the following facts:

I. PARTIES

1. Bickhart was a "participant" in the Carpenters Health and Welfare Fund of Philadelphia and Vicinity ("Welfare Plan"). Amended Complaint ¶¶5-6; Amended Answer ¶¶5-6.

2. Bickhart has exhausted his administrative remedies under the Health and Welfare Fund and has standing to maintain this action. Amended Complaint ¶4; Amended Answer ¶4.

3. Defendant Health and Welfare Fund is a trust fund under 29 U.S.C. 186(c) Amended Complaint ¶¶7, 9; Amended Answer ¶7, 9.

4. Defendant Board of Administration of the Carpenters Health and Welfare Fund of Philadelphia and Vicinity is the plan sponsor, plan administrator and named fiduciary of the Welfare Plan.  Amended Complaint ¶10; Amended Answer ¶10.

5. The Welfare Plan is an employee benefit plan under 29 U.S.C. §1002. Amended Complaint ¶7; Amended Answer ¶7.

6. Defendants Edward Coryell, Thomas Breslin, Edward Coryell, Jr., Michael Hand, Michael Morrow, Robert P. Naughton, James R. Davis, Frank Boyer, Joseph Clearkin, Jack Healy, Frank T. Lutter, and Philip Radomski served as the members of Defendant Board of Administration of the Health and Welfare Fund (collectively, "Board of Administration Members") in 2015 through February 2016. Amended Complaint ¶11; Amended Answer ¶11; Deposition of Ed Coryell, August 8, 2016, at 9-12.

2

7. The Board of Administration acts as a collective board or, at times, through a subcommittee thereof. Amended Complaint ¶20; Amended Answer ¶20.

8. Each of the members of the Board of Administration is a fiduciary with respect to the Welfare Plan with respect to the benefit claim and appeals at issue in this case.

## II. COUNT III – BENEFITS CLAIM

9. Exhibit A to the parties' stipulation of facts describes documents that are part of the Administrative Record pertaining to Plaintiff and/or the termination of Plaintiff's Retiree Medical Benefits.

## III. COUNTS I AND II – FACTS

10. Bickhart was born in February 1953. Amended Complaint ¶22; Amended Answer ¶22.

11. Bickhart applied to retire on January 1, 2007 at the age of 53 and began receiving pension benefits from the Carpenters Pension & Annuity Plan of Philadelphia and Vicinity ("Pension Plan") and Retiree Medical Benefits from the Welfare Plan as a Retired Covered Participant.

12. Bickhart paid monthly premiums to the Health and Welfare Fund between the years 2010 and 2015, ranging in amounts increasing from $50 to $230, from year to year. Deposition of Piotr Tonia, July 27, 2016, at 78-80.

13. Information that Bickhart allegedly was working for a non-union contractor was provided by a Union Business Agent to Coryell on June 5, 2015. Deposition of Ed Coryell, August 8, 2016, at 44-45, 60; Defendant's May 19, 2016 Supplemental Response to Plaintiff's First Set of Interrogatories No. 16.

14. Coryell provided information to Tonia on June 5, 2015 that Bickhart was working for a non-union contractor. Deposition of Ed Coryell, August 8, 2016, at 31; Defendant's May 19, 2016 Supplemental Response to Plaintiff's First Set of Interrogatories No. 16.

15. Piotr ("Pete") Tonia was appointed in November 2005 as the Fund Coordinator and Coordinator of Benefits for the Health and Welfare Fund by the Board of Administration. Amended Complaint ¶¶13, 55; Amended Answer ¶¶13, 55; Deposition of Piotr Tonia, July 27, 2016, at 9.

16. Tonia, as Fund Coordinator and Coordinator of Benefits, makes decisions on behalf of the Health and Welfare Fund office to terminate retiree medical benefits under the Welfare Plan. Amended Complaint ¶21; Amended Answer ¶21.

17. Tonia made the decision to terminate Bickhart's retiree medical benefits under the Health and Welfare Fund on or about June 8, 2015. Deposition of Piotr Tonia, July 27, 2016, at 27.

18. A July 21, 2015 Appeals Memo was prepared by Tonia pertaining to the termination of Bickhart's retiree medical benefits was presented to the Board of Administration Appeals Committee on that date. Deposition of Piotr Tonia, July 27, 2016, at 62.

19. The Appeals Committee was comprised of Board of Administration Members Coryell and James Davis, who were the only voting members of the Appeals Committee, among other individuals who were not Board of Administration Members. Deposition of Piotr Tonia, July 27, 2016, at 62.

20. The voting members of the Appeals Committee agreed with the recommendation of Fund Coordinator Tonia to deny Bickhart's appeal. Deposition of Piotr Tonia, July 27, 2016, at 64-65.

21. The Board of Administration adopted the recommendation of the Appeals Committee on July 21, 2015. W30003-W-30007, Carpenters Health & Welfare Fund of Philadelphia & Vicinity Board of Administration Minutes of Meeting of July 21, 2015.

22. The First Amendment to the Amended and Restated Health and Welfare Fund was adopted by the Board of Administration of the Health and Welfare Fund on January 20, 2009. Amended Complaint, Docket # 29, Exhibit 1; Amended Complaint ¶59; Amended Answer ¶59.

23. No further Amendment to Section 3.04 of the Welfare Plan was adopted by the Board of Administration between the First Amendment thereto on January 20, 2009 and the termination of Bickhart's retiree medical benefits. Amended Complaint ¶61; Amended Answer ¶61. A change was made in 2016 for the future.

24. The administration of waiver requests was undertaken primarily by Coryell, who exercised the discretion to grant waivers or deny them. Deposition of Jack Healy, April 18, 2016, at 54.

25. If Coryell wrote "OK E.C." or a similar note on a written request for a waiver, such notation constituted a waiver of the "return to work rule" under Section 3.04 of the Health & Welfare Plan. Deposition of Ed Coryell, August 8, 2016, at 50; Deposition of Piotr Tonia, July 27, 2016, at 25-26.

26. If Coryell wrote "No E.C." or a similar note on written request for a waiver, such notation constituted a denial of a waiver of the "return to work rule" under Section 3.04 of the Welfare Plan. Deposition of Ed Coryell, August 8, 2016, at 50; Deposition of Piotr Tonia, July 27, 2016, at 26.

4

27. The written documentation of approval or denial under the Waiver Rule of under Section 3.04(d) of the Health & Welfare Plan since January 2007 includes 900 pages of documents setting forth the notations contained in the two preceding paragraphs, Bates Nos. W20000 through W20899. Deposition of Piotr Tonia, July 27, 2016, at 24.

IV. PROCEEDINGS

28. On October 16, 2015, Bickhart filed the instant action seeking reinstatement of his retiree medical benefits and monetary damages in at least the amount of $21,000 for the Defendants' alleged violations of (1.) 29 U.S.C. § 1102 (specificity requirement in plan document), (2.) 29 U.S.C. § 1104 (breach of fiduciary duty) and (3.) 29 U.S.C. § 1132(a)(1)(B) (claim for benefits). [Docket # 1]

29. On December 22, 2015 Defendants filed an Answer and Counterclaim seeking recovery of the medical claims paid by the Welfare Fund for Bickhart and his wife from the date of his retirement to the termination of his Retiree Medical Benefits. [Docket #2]

30. On September 26, 2016, Defendants dismissed the counterclaims against Plaintiff. [Docket #25; Order Granting Dismissal, [Docket #26]

31. On December 11, 2016, Plaintiff filed an Amended Complaint. [Docket #29]

32. On December 13, 2016, Defendants filed an Answer to Plaintiff's Amended Complaint. [Docket #31]

In addition, the Administrative Record reveals the following pertinent facts

which are either not in dispute or are construed in the light most favorable to plaintiff:

Tonia's June 8, 2015 letter which notified Bickhart that his retiree medical

benefits had been terminated states, in pertinent part:

> We have received information that you have worked one or more hours in non-contributory work in the construction industry since your retirement. As a result, your retiree medical benefits have been terminated retroactively to the date of your retirement January 1, 2007. . .
>
> The Carpenters Health & Welfare Plan of Philadelphia & Vicinity provides that retiree medical benefits are terminated if you return to work for one or more hours of non-contributory work in the construction industry. These benefits

cannot be restored even if you cease work….I have enclosed a copy of Section 3.04 of the Plan on which this determination is based.

This is an initial determination by the Plan regarding the termination of your benefits. If you disagree with this determination, you may file an appeal to the Board of Administration. . .

A claimant who disagrees with the Plan's decision or lack thereof may file suit in Federal court under Section 502(a) of ERISA following an adverse benefit determination on appeal of the lack of a timely response.

Ex. 1A, 000009-000011.

At the time of Bickhart's retirement in 2007, Section 3.04 of the

Welfare Plan provided as follows:

3.04 All benefits under the Fund will terminate for a Retiree and his spouse and other eligible dependents in the following circumstances:

(a)The Retiree returns to work in any phase of the construction industry and works more than 40 hours in Covered Employment for which contributions to the Fund are required in a calendar month,

(b) A Retiree works in the construction industry in work, which is not Covered Employment for one (1) or more hours in a calendar month.

(c) A Retiree, his spouse or eligible dependents commit or attempt a fraud upon the Fund.

(d) Benefits will also terminate following the Retiree's death. On the death of a Retiree, benefits will continue to his surviving spouse and eligible dependents to the end of the Benefit Period in which the Retiree dies and for an additional 12 months.

(e) Benefits terminated under this section are lost forever and will not be restored. The Retiree, spouse or dependent may be entitled to purchase benefits by self-payment under COBRA or other applicable law.

(f) The Board of Administration, or one or more members on their behalf, may waive the work rules on termination on the basis of labor need or other considerations relevant to the purposes of the termination rules. The waiver may be limited to a specific retiree or a class or group of retirees or a specific jobsite, timeframe or class or group of work without affecting the enforcement of the rules in other case.

(g) A Retiree must notify the Fund of any return to work in the construction industry and the location, employer and duration of work. A Participant may seek an advance determination concerning possible termination of benefits due to work by a written request in the same manner as a request for review of a denied claim.

Ex. 1A, 000163-164

After the economic collapse in September 2008 and decline in carpentry work, Section 3.04 of the Welfare Plan was amended in February 2009 to read as follows:

3.04 (a) All benefits under the Fund will terminate for a Retired Covered Participant and his spouse and other eligible dependents in the following circumstances:

*(1) A Retired Covered Participant works in the construction industry for one (1) or more hours after retirement, or*

(2) A Retired Covered Participant, his spouse or eligible dependents commit or attempt a fraud upon the Fund.

(b) Benefits will also terminated following the death of a Retired Covered Participant. On the death of a Retired Covered Participant, benefits will continue to his surviving spouse and eligible dependents to the end of the Benefit Period in which the Retired Covered Participant dies and for an additional 12 months.

(c) Benefits terminated under this section are lost forever and will not be restored. The Retired Covered Participant, spouse or dependent may be entitled to purchase benefits by self-payment under COBRA or other applicable law.

(d) The Board of Administration, or one or more members on their behalf, may waive the work rules on termination on the basis of labor need or other considerations relevant to the

purposes of the termination rules. The waiver may be limited to a specific retiree or a class or group of retirees or a specific jobsite, timeframe or class or group of work without affecting the enforcement of the rules in other cases.

(e) A Retired Covered Participant must notify the Fund of any return to work in the construction industry and the location, employer and duration of work. A Retired Covered Participant or other affected person may seek an advance determination concerning possible termination of benefits due to work by a written request in the same manner as a request for review of a denied claim.

Ex. 1A, 000280. (emphasis added.)

In his June 19, 2015 appeal letter to the Welfare Plan, Bickhart admitted that he was approached on a job site on June 5, 2015 by a business agent of the Union, stated that he had since "ceased employment" and promised that he "will never engage in work in the construction industry again."  Ex. 1A, 000012.

In his July 21, 2015 Appeals Memo, Tonia commented as follows:

Participant openly admitted to working in the industry. The Participant sent in his tax returns from 2010 through 2014 to verify his employment. The Tax returns showed that he has been working in the industry since 2010. In a phone interview with the Participant on July 14, 2015 he further admitted that he has been a project manager for Turner Construction dating back to 2007 and had done some of the same work for Skanska. He has requested his 2007-2009 tax returns from his accountant to verify his work history. A multiemployer Plan like this Plan can and does suspend for any work in the construction industry.

Ex. 1A, 000127.

By letter dated June 23, 2017, Tonia advised Bickhart, *inter alia,* that he had "the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits." Ex. 1A, 000013.

**8**

As part of the pension application Bickhart filled out on December 12, 2006, Bickhart  signed a pledge that he was "completely retiring from any employment in the Trade and from employment in any capacity for any employer in the Construction Industry." Ex. 1A, 000028. He also pledged to report any work in the "Industry," including specifically "any business activity of any employer contributing to a Plan of Benefits with the Carpenter's Pension Fund," to the Fund office. *Id.* The same form acknowledged that his pension would be suspended if he undertook "work within the construction industry in any capacity (as an employee, partner or sole proprietor, and if as an employee, whether or not represented by a union)…" *Id.*

Plaintiff's tax records for the years 2010 through 2014 revealed that plaintiff received wages for work performed at Turner Construction and its affiliate, TC Professional Services after he had retired. Ex.1A, 00048,000065,000081,000099,000120.

Bickhart was notified by letter dated July 27, 2015 that the "Appeals Committee of the Board of Administration met on Tuesday July 21, 2015, to review [Bickhart's] pending appeal" and that the "Board of Administration met on the same day and concurred in the recommendation of the Appeals Committee by denying [Bickhart's] appeal." Ex.1A, 000135. The letter further stated: "The decision of the Appeals Committee and its recommendation to the Board of Administration were based on Plan Section 3.04(a)(b), which states: All benefits under the Fund will terminate for a Retiree and his spouse and other eligible dependents in the following circumstances

> (a) The Retiree returns to work in any phase of the construction industry and works more than 40 hours in Covered Employment for which contributions to the Fund are required in a calendar month,
>
> (b) A Retiree works in the construction industry in work, which is not Covered Employment for one (1) or more hours in a calendar month.

Therefore, since you were working in the construction industry after your retirement your health care coverage will not be reinstated." *Id.*

## COUNT III

In Count III of his First Amended Complaint, plaintiff asserts a claim for benefits under 29 U.S.C. 1132(a)(1)(B), claiming that the termination of his retiree medical benefits was arbitrary and capricious.

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The Supreme Court has held that "a denial of benefits challenged under [ERISA] is to be reviewed [by a court] under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, a court will review the decision under an abuse-of-discretion (or arbitrary and capricious) standard. *Metro. Life Ins. Co.*, 554 U.S. at 111 (2008); *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011).

Section 5.10 of the Welfare Plan document states:

In addition to the powers and duties set forth in the Agreement and Declaration of Trust, the Board of Administration has express authority to determine eligibility for benefits and to interpret the provisions of the Agreement and Declaration of Trust, Plan, and related documents as adopted, amended, and rewritten from time to time. This includes but is not limited to, the power to determine all methods of providing for benefits, to determine a Covered Participant's or Dependent's rights, benefits and obligations under this Plan, and to make rules and procedures for the

10

> administration of the Plan as they deem necessary and
> reasonable.   Any   determination,   interpretation,   or
> construction by the Board of Administration is final,
> conclusive and binding on all parties, including but not
> limited to Employees, the Union, the Plan, Covered
> Participants and Dependents to the maximum deference
> permitted by law.

Ex. 1A, 000178-179; Ex. 1B, 000261-262.

As this language clearly grants the administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the deferential arbitrary and capricious standard applies. *See Fleisher v. Standard Insurance Company*, 679 F. 3d 116, 120-21 (3d Cir. 2012).

Under the arbitrary and capricious standard, a court may overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (citation and internal quotation marks omitted).  A decision is supported by 'substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision.'" *Courson v. Bert Bell NFL Player Retirement* Plan, 214 F. 3d 136, 142 (3d Cir. 2000) (quoting *Daniels v. Anchor Hocking Corp.*, 758 F.Supp. 326, 331 (W.D.Pa. 1991)). The scope of review is "narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Abnathya v. Hoffmann-LaRoche, Inc.*, 2 F. 3d 40, 45 (3d Cir. 1993). This deferential review "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation." *Conkright v. Frommert*, 559 U.S. 506, 517 (2010). In conducting our review, we limit ourselves to the Administrative Record, that is, to the "evidence that was before the administrator when

[it] made the decision being reviewed." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997); *see also Post v. Hartford Ins. Co.*, 501 F.3d 154, 168 (3d Cir. 2007).

The Administrative Record reveals that when Bickhart retired, he signed a pledge that he was completely retiring from any employment in the Trade and from employment in any capacity for any employer in the Construction Industry. Ex. 1A, 00028. He also pledged to report any work in the "Industry," including specifically "any business activity of any employer contributing to a Plan of Benefits with the Carpenter's Pension Fund," to the Fund office. *Id*. The same form acknowledged that his pension would be suspended if he undertook "work within the construction industry in any capacity (as an employee, partner or sole proprietor, and if as an employer, whether or not represented by a union)…" *Id*.

In addition, Section 3.04(a) of the Health and Welfare Plan, as in effect at Bickhart's retirement and as amended effective February 1, 2009, specifically provided that a retired covered participant, such as plaintiff,  would lose his medical coverage if he performed work in the construction industry for one (1) or more hours after retirement.  Ex 1A, 000280.

The Administrative Record reveals that Bickhart engaged in more than one (1) hour of work in the construction industry after the February 1, 2009 amendment as well as earlier. In his June 19, 2015 appeal letter to the Welfare Plan, Bickhart admitted that he was approached on a job site on June 5, 2015 by a business agent of the Union and was working in the construction industry.  Ex.1 A, 000012. In a phone interview with the Fund office on July 14, 2015, Bickhart admitted that he had been working for Turner Construction Company as a project manager dating back to 2007, after he had retired.

12

Ex. 1A, 000127. Plaintiff also admitted he did the some of the same work for the construction company Skanska. *Id.* Finally, Plaintiff's tax records for the years 2010 through 2014 revealed that plaintiff received wages for work performed at Turner Construction and its affiliate, TC Professional Services after he had retired. Ex. 1A, 000048,000065,000081,000099,000120. Bickhart does not dispute any of this evidence.

There is also no evidence in the Administrative Record that plaintiff applied for a waiver of suspension at any time after 2008 pursuant to section 3.04(d) of the Welfare Plan. Nor is there any evidence that plaintiff notified the Fund of any return to work in the construction industry and the location, employer and duration of work or that plaintiff sought an advance determination concerning possible termination of benefits due to work pursuant to section 3.05(e) of the Welfare Plan. As a result, the Court finds that the Administrator's decision was not without reason, was supported by substantial evidence and was not erroneous as a matter of law.

In his motion for summary judgment, plaintiff argues that the defendants committed a number of procedural irregularities that mandate a finding that the Board abused its discretion in terminating his benefits. These include: (1) Section 5.10 of the Welfare Plan empowers the Board of Administrators, not the Fund Coordinator, to determine eligibility for benefits and any delegation to the Fund Coordinator must be in writing; (2) the language in the June 8, 2015 initial determination letter was conclusory in that it did not contain specifics regarding the alleged improper employment or the evidence that was relied upon in making the determination; (3) the phrase "non-contributory work" contained in the June 8, 2015 letter and relied on by defendants does not appear in Section 3.04 of the Welfare Plan; (4) Tonia attached to the June 8, 2015

determination letter the old version of Section 3.04 that had been replaced in 2009; (5) Tonia did not mention in the June 8, 2015 determination letter that an "important reason" plaintiff's benefits were terminated was because plaintiff had failed to secure a waiver; (6) Tonia's Appeals Memo contained various misstatements; (7) the July 27, 2015 Appeal Denial letter also referred to the obsolete version of Section 3.04 of the Welfare Plan and failed to contain details of the alleged improper work plaintiff engaged in. (ECF 33-18, pp. 24-32).

Section 503 of ERISA, 29 U.S.C. § 1133(1),(2) provides in relevant part that:

> [E]very employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1) & (2). Also, as Plaintiff points out, the Secretary of Labor has promulgated regulations establishing the requirements of adequate notice under Section 503. *See* 29 C.F.R. § 2560.503-1(g)(1).

Indeed, in *Grossmuller v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW,* our

Court of Appeals opined:

> To afford a plan participant whose claim has been denied a reasonable opportunity for full and fair review, the plan's fiduciary must consider any and all pertinent information reasonably available to him. The decision must be supported by substantial evidence. The fiduciary must notify the

> participant promptly, in writing and in language likely to be understood by laymen, that the claim has been denied with the specific reasons therefor. The fiduciary must also inform the participant of what evidence he relied upon and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence.

715 F.2d 853, 857–58 (3d Cir.1983).

Our Court of Appeals has stated that this Court may consider procedural irregularities in making a determination as to whether there was an abuse of discretion by the Plan Administrator. *Miller*, 632 F. 3d at 845. "[T]he procedural inquiry focuses on how the administrator treated the particular claimant." *Post v. Hartford Ins. Co.*, 501 F. 3d 154, 162 (3d Cir. 2007). However, the Court of Appeals in *Miller* also held that the Court need not consider such procedural irregularities when an "'abundance of evidence'" exists to support the denial or termination of a claim, since such "procedural irregularities would not serve to 'tip [] the scales in favor of finding that the [administrator] abused its discretion.'" *Miller*, 632 F. 3d at 846 (quoting *Estate of Schwing v. The Lily Health Plan*, 562 F. 3d 522, 526 (3d Cir. 2009).

In *Estate of Schwing*, the plaintiff's decedent was terminated from his sales position with the defendant for falsifying call data. Plaintiff's decedent sought payment of severance benefits pursuant to the defendant's severance plan. The defendant's plan administrator denied the request, finding that plaintiff's decedent was ineligible for severance benefits because he was terminated for misconduct. The plan administrator had learned from both plaintiff's supervisor and the defendant's human resource department that plaintiff's decedent had admitted to the misconduct. Plaintiff's decedent nevertheless challenged the plan administrator's decision, denying that he had admitted to any wrongdoing and claiming that had been terminated as a result of

15

mistakes or in retaliation for filing a previous grievance. Following a bench trial, the District Court determined that the plan administrator's decision was tainted by a conflict of interest and the plan administrator had failed to adequately investigate the decedent's claim. In reversing the district court, the Court of Appeals found that even if it considered the purported conflict of interest to be serious, "there was an abundance of evidence of Schwing's misconduct to support the denial of his claim and a lack of evidence to support his theory of pretext." *Estate of Schwing, supra.*

As discussed, *supra*, an abundance of evidence indeed exists to support the conclusion that, as a Retired Covered Participant, Bickhart worked in the construction industry for well more than one hour after he retired. Therefore, the Court finds that consideration of the procedural irregularities alleged by plaintiff would not serve to "tip the scales in favor of finding that the [administrator] abused its discretion" in terminating Bickhart's retiree medical benefits. *Estate of Schwing*, *supra*. Such irregularities are mere technical and procedural errors and cannot overcome the clear and substantial violation of Section 3.04 of the 2009 amended version of the Welfare Plan by the plaintiff.

Plaintiff also refers to a list containing the redacted names of 311 retirees all but one of whom plaintiff claims are working retirees with medical benefits. [ECF 33-2] In a supplemental declaration, however, Tonia avers that he has "reviewed the list of 311 retirees" ....and that the "list is an extract of retirees with retiree medical benefits from a larger list from Pension Plan records of working retirees who had waivers of suspension of benefits." [ECF 38, ¶ 2.] Tonia further avers that he "found no waiver for ongoing regular work of the type that Bickhart performed." *Id.*at ¶ 4. As this declaration

has never been rebutted by the plaintiff, and there is no evidence in the Administrative Record that Bickhart sought a waiver at any time after 2008, the Court finds Bickhart was not singled out in losing his retiree medical benefits.

For the foregoing reasons, judgment will be entered in favor of defendants on Count III.

## COUNT I

In Count I, plaintiff claims that the discretionary benefit termination provision contained in Section 3.04 of the Plan violates section 402 of ERISA, 29 U.S.C. 1102, which requires that "every employee benefit plan shall…specify the basis on which payments are made to and from the plan." Plaintiff also argues the waiver provision contained in section 3.04(d) lacks specificity in that the terms "labor need", "other conditions relevant to the purposes of the termination rules" and "work rules on termination" are neither defined nor described.

Our Court of Appeals has already held that allowing an employer to make welfare benefits determinations on an individualized or case by case basis are not prohibited by ERISA as long as that reservation is specifically stated as part of the plan. *Hamilton v. Air Jamaica, Ltd.*, 945 F. 2d 74, 77-79 (3d Cir. 1991); *Hlinka v. Bethlehem Steel Corp.*, 863 F. 2d 279, 283 (3d Cir. 1988). Here, Section 3.04 of the Health and Welfare Plan specifically provided that a member's retiree medical benefits would be terminated if the member worked in the construction industry without a waiver after he retired.

Plaintiff has no basis for claiming terms in the waiver provision in section 3.04(d) lack specificity since there is no evidence that plaintiff even applied for, let alone was denied, a waiver at any time from 2010-2015.

In addition, the Court notes that a collectively-bargained plan is not subject to judicial review over the reasonableness of its terms. See also, *Hamilton, supra*, quoting *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984) ("ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content of such plans.") Judgment will therefore be entered in favor of defendants on Count I.

## COUNT II

In Count II, plaintiff alleges that the Board of Administration, its Members and Tonia violated section 404(a) of ERISA, 29 U.S.C. § 1104(a), by allegedly breaching a number of fiduciary duties, including their respective duties of loyalty and to comply with the Plan Document and to properly convey the terms of the Welfare Plan to participants. Plaintiff seeks nearly the exact same relief he seeks in Count III, namely that the Court "enjoin the Defendant Board of Administration Members and Pete Tonia from enforcing the Plan Benefit Termination Rule against Plaintiff John Bickhart and further to redetermine or cause the redetermination of Plaintiff Bickhart's eligibility for Retiree Medical Benefits under the Health and Welfare Fund, without regard to the Plan Benefit Termination Rule and to provide such other equitable relief, including but not limited to, requiring the payment of money damages against or imposing a surcharge upon the Defendant Board of Administration Members for losses incurred by Plaintiff

Bickhart as a result of their breach of fiduciary duty, as this Court deems appropriate." First Amended Complaint, ¶ 117.

In Count III, plaintiff requests that this Court "enjoin the Board of Administration and the individual Defendants from enforcing the Plan Benefit Termination Rule against Plaintiff John Bickhart, and further to redetermine Plaintiff Bickhart's eligibility for Retiree Medical Benefits under the Health and Welfare Fund, without regard to the Plan Benefit Termination Rule and to provide such other equitable relief as the Court deems appropriate." First Amended Complaint, ¶ 127.

Section 502(a)(3) of ERISA allows plaintiffs in civil actions to "obtain other appropriate equitable relief" for violations of ERISA. 29 U.S.C. § 1132(a)(3). An equitable claim for breach of fiduciary duty, however, is generally not available where another section of ERISA provides an adequate remedy for a plan beneficiary's injury. *Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("[I]n which case such relief normally would not be 'appropriate' "). The "great majority of circuit courts have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § [502](a)(l)(B) may not proceed with a claim under § [502] (a)(3)." *Korotynska v. Metro. Life Ins. Co.,* 474 F.3d 101, 106 (4th Cir.2006) (citing decisions from the Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits); *cf. Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 89–90 (2d Cir.2001) (holding that plaintiffs may simultaneously seek relief under § [502](a)(1)(B) and § [502](a)(3)). As the United States District Court for the  Middle District of Pennsylvania has stated, "[c]ourts have interpreted ERISA to mean that a plaintiff cannot sue for breach of fiduciary duties to obtain denied benefits." *Hartman v. Wilkes–Barre Gen. Hosp.,* 237 F.Supp.2d 552, 557

(M.D.Pa.2002); *see also Harrow v. Prudential Ins. Co. of America,* 279 F.3d 244, 254 (3d Cir. 2002)(finding that breach of fiduciary duty claim was merely a disguised claim for benefits); *D'Amico v. CBC Corp.,* 297 F.3d 287, 292 (3d Cir. 2002)(same). Furthermore, the United States Supreme Court has held that a claim for money due and owing does not constitute equitable relief and is not available under § 502(a)(3). *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210–11, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). As a result, judgment will be entered in favor of the defendants on Count II.